## Case No. 10,396.

### In re OBERHOFFER.

[9 Ben. 485;[1] 17 N. B. R. 546.]

District Court, S. D. New York. May, 1878.

PRIVILEGED DEBTS IN BANKRUPTCY — JUDGMENT AGAINST ASSIGNEE —ASSIGNEE'S COSTS AND COMMISSIONS.

At the commencement of bankruptcy proceedings, the bankrupt, who was a manufacturer of woollen cloths, had in his mill wool which he had received from A. under a contract, by which he was to work it up into cloth for compensation. The assignee in bankruptcy took possession of the mill and of the wool in it, in the form of wool yarns and partly finished cloth, and under the direction of the court was allowed to purchase other materials and complete the unfinished stock. A. demanded of the assignee the unfinished cloth, yarn, and wool on hand, offering to pay for the labor and material expended on it. The assignee refused to deliver it, and A. brought suit in trover against him and recovered a judgment for the amount realized by the assignee from the sale of goods manufactured from A.'s wool, deducting the cost of labor and other materials put into them. A.'s claim was a doubtful one, and such as the assignee was justified in contesting. The amount of money in the hands of the assignee was not enough to pay this judgment after deducting the costs, fees, and expenses of the assignee in the bankruptcy proceedings and his administration of the estate. A. thereupon moved the court that the judgment be paid by the assignee as far as the funds in his hands would go: *Held*, that the petitioner having recovered damages had no claim to the money in the hands of the assignee, as being his own property, and was entitled to no priority as against the claim of the assignee for his costs and expenses of administration paid or incurred, or for his commissions.

[In the matter of Louis M. Oberhoffer, a bankrupt.]

A. P. Whitehead, for the motion.

J. E. Parsons, opposed.

CHOATE, District Judge. The bankrupt was a manufacturer of woollen cloths. At the time of the commencement of the proceedings in bankruptcy, he had in his mill certain wool which he had received from R. W. Aborn and others, under a contract, by which he was to work up the same into cloth for them, and to receive compensation for the labor and materials used in the manufacture. The assignee took possession of the mill and its contents, including the wool in question, then in course of manufacture, in the form of wool yarns and partly completed cloth. Under the direction of the court the assignee was allowed to purchase other materials and to complete the manufacture of cloth from the materials and unfinished stock in the mill, and the new material so purchased. The petitioners demanded of the assignee the unfinished cloth and yarn, and the wool on hand, belonging to them, offering to pay the charges for labor and materials expended thereon. The assignee having refused to recognize their claim, they brought suit against him as assignee in the circuit court in trover,

and after a trial and verdict in their favor, have recovered judgment' for the principal sum of $1,737.69 with $629.79 interest, as their damages, and $208.11 costs. Under the instructions of the court the recovery was limited to the amount realized by the assignee from the sale of the goods manufactured from the petitioner's wool, deducting therefrom the cost of labor and other materials put into the goods by the bankrupt and the assignee. The jury found the amount they were so entitled to, to be said sum of $1,737.69, and interest was allowed from the time of the demand made upon the assignee by the petitioners.

The amount in the hands of the assignee is insufficient to pay this judgment in full after the payment of the fees, costs, and expenses of the assignee incurred in the course of the bankruptcy proceeding and in his administration of the estate, and the petitioners now move that their judgment be paid in full or so far as the funds in the hands of the assignee will go toward its payment, the effect of granting which will be to give it a priority over the costs and expenses of administration and the commissions of the assignee.

The motion must be denied. The position taken by the petitioners that the money in the hands of the assignee is their money cannot be sustained. If instead of bringing an action of trover for damages the petitioners, being able to trace into the hands of the assignee and to identify in any fund or as part of any separate fund in his hands the proceeds of their goods, had claimed it as their own money on application to the court and proof of its identity, they might have had an order that it be paid to them, with proper deductions for labor and materials expended on their goods. Such a claim however, would not have extended beyond the money of the petitioners so traced and identified in the hands of the assignee with such increase thereof or interest thereon as the assignee might actually have realized on it in his hands. It would not extend to interest on the amount of their money, unless actually realized by the assignee, for beyond that any interest would not be their money, but damages for the detention of their money or goods, nor would such claim extend to any costs. But instead of pursuing this remedy, perhaps because it was impossible for them to trace and identify the actual proceeds of their goods they have elected to sue the assignee in trover, to sue for and recover not their own money, but damages, for the tortious detention of their goods. They have had their damages assessed and determined by verdict and judgment. They have thereby clearly lost and waived any claim they may once have had to the money in the hands of the assignee as their own money. All their rights against him are merged in the judgment. They cannot hold their judgment for damages and their title to the proceeds of the goods as their own too.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

The petitioners then having no claim to the money in the hands of the assignee as their own money, have they any lien on it, or any claim of priority as against the claim of the assignee for the allowance of his fees and costs and expenses of administration paid or incurred, or for his commissions? I think not. Section 5101, Rev. St., provides that in the order for a dividend "the fees, costs, and expenses of suits, and of the several proceedings in bankruptcy, and for the custody of property" are first to be paid in full. There is no express provision as to judgments that may be recovered against the assignee, and I see no reason for preferring such a judgment over these expenses which are expressly preferred by the statute. On the contrary the preference given to the fees, costs, and expenses of the assignee is clearly just and right. Assuming that the estate of the bankrupt is liable for such claims as that of the petitioners in preference to the claims of creditors of the bankrupt, yet in no proper sense is there any estate to pay their claim, except what remains after paying the necessary expense of administering it, and realizing upon it, and thus creating the fund available to pay such claims. Therefore by virtue of the express provisions of the statute as well as upon general equitable grounds, the fees, costs, and expenses of administration must be first paid. I have had some doubt as to the assignee's commission, the doubt being whether as against the petitioners, toward whom his act was tortious, he can equitably deplete the fund by taking out anything for his services, but I have concluded that he is entitled to his commission. Though guilty of a technically tortious act as against the petitioners, the case clearly shows that even as regards their claim he has only done his duty toward the creditors. The petitioners' claim was not so clear that it was his duty to yield to it, and it was so doubtful in fact and in law that a judicial investigation was necessary, and it was settled only after a long trial, by the verdict of a jury. He has done nothing for which he should be deprived of his commissions. Motion denied.